IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
7:08-CR-81-1BR

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| | ) | DEFENDANT'S PRO SE MOTION FOR |
| | ) | COMPASSIONATE RELEASE |
| NATHANIEL FRANK DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

Mr. Nathaniel Frank Davis, via undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his immediate vulnerability to COVID-19 while detained with a high-risk, chronic medical condition. Moreover, as verified herein and also attached to said Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Davis has now properly exhausted his administrative remedies. (*See* Exhibit A: Pro So Motion for Compassionate Release & B: Verification of Receipt Mr. Davis's Exhaustion of his administrative remedies.[1]) Mr. Davis filed the request with the warden on July 27, 2020 and has not heard any reply to his request as of today's date.

Mr. Davis suffers from Chronic Hepatitis C, a liver disease which deteriorates the liver, causing cirrhosis of the liver. Moreover, he has expressed to undersigned counsel the mental strain and psychological difficulty he has been experiencing being on lock down most of the day due to

---

[1] Mr. Davis filed Exhibit B, his request for Compassionate Release with the Warden at Lewisburg USP, which was shortly after being made aware of his need to do so. It is reasonably anticipated that this request will either be denied or the required (30) thirty days will lapse. However, undersigned counsel believed it most efficient for the Court and Mr. Davis to promptly file her response on the current deadline and as such, is not requesting a continuance to wait for such occurrence to transpire.

1

COVID-19, which has only served to compound his medical problems and also places him at the serious risk category of becoming severely ill from COVID-19. *See* Exhibit A: Pro Se Motion for Nathaniel Frank Davis; specifically, please *see* page 1 wherein it states that Mr. Davis is suffering from "Chronic Hepatitis C."

Mr. Davis was diagnosed with Hepatitis C in 2009, meaning that his condition has been progressing and deteriorating his liver for eleven (11) years, which further substantiates the impending need for compassionate release given that his immune system is seriously compromised. *See* Exhibit C: Medical Records of Mr. Davis. People with Hepatitis C require certain medications that Mr. Davis is not receiving while detained. *See* Exhibit C, page 2: Medical records showing Mr. Davis is only prescribed Ibuprofen; *See* Exhibit D: Medical Evidence of medications required for correct treatment of Hepatitis C. Furthermore, Mr. Davis is designated to Lewisburg USP in Pennsylvania, where staff members have already been infected with COVID-19 at increasingly high rates. (*See* https://www.bop.gov/coronavirus/ wherein the public is provided a "snap shot" of one time, which clearly is subject to deteriorating conditions and an increasing hazard of airborne disease from moment to moment.) Most judges from the Eastern District of North Carolina, have granted such Compassionate Release Requests where it is appropriate to show this type of legally-sanctioned mercy, it is respectfully requested that this Honorable Court also issue an order reducing Mr. Davis's sentence to time served (and/or "impose a term of probation or supervised release with or without any conditions […]" 2 and/or add a period of home confinement as a condition of supervised release), given that it is appropriate to do so in Mr. Davis's immediate case as well. For example, *see United States v. Roberto Pablo Gutierrez*, Crim. No. 5:11-CR-149-1-BR, ECF No. 156 (E.D.N.C. April 30, 2020).

---

2 *See* 18 U.S.C. Section 3582(c)(1)(A).

2

Case 7:08-cr-00081-BR   Document 61   Filed 08/10/20   Page 2 of 15

## STATEMENT OF FACTS

Mr. Davis was charged and arrested on related state charges on June 10, 2008. On December 1, 2008 Mr. Davis pled guilty to Count 1 of the Indictment in violation of 18 U.S.C. §2113(a) and is now currently serving out a 188-month sentence. This Honorable Court also placed him on three years of supervised release. Mr. Davis has been incarcerated since June 10, 2008 and his cited release date is for June 29, 2022, having served more than eighty-five percent of his sentence utilizing his cited release date.[3]

Disturbingly, this current COVID-19 outbreak has not been contained in the United States and certainly and sadly not within our prison walls either. On June 16, 2020 Mr. Davis filed his Pro Se Motion for Compassionate Release with the United States District, Eastern District of North Carolina. *See* Exhibit A: Pro Se Motion for Nathaniel Frank Davis. Mr. Davis filed a request for Compassionate Release reduction of his sentence with the Warden at Lewisburg USP on July 27, 2020. *See* Exhibit B: Compassionate Release Request with Warden at Lewisburg USP. Thus, it is respectfully submitted that although he has not proceeded in the best order of submitting matters, that this Honorable Court still find that he has satisfactorily pursued his administrative remedies given that all matters have been completed, as required by 18 U.S.C. § 3582(c)(1)(A). Accordingly, it is respectfully submitted that this is acceptable under these exigent and dire circumstances wherein Mr. Davis initially proceeded on his own in a *pro se* fashion doing the best he could and knew how to do at that time. *See Haines v. Kerner*, 404 U.S 519, 520 (1972). Regardless, Mr. Davis would otherwise clearly qualify for a waiver of the exhaustion requirement under Section 3582(c) given that "(1) the relief sought would be futile upon exhaustion; or (3)

---

[3] From the date that Mr. Davis was incarcerated on related state charges to the date that this motion was filed (June 10, 2008 - August 10, 2020) calculates to 146 months. From the date that Mr. Davis was incarcerated to the date that he is set to be released (June 10, 2008 - June 29, 2022) calculates to 168 months and 20 days; 146 months of 168 months calculates to 86.9 percent of his sentence having already been served.

3

pursuit of the agency review would subject the petitioner to undue prejudice" since he is clearly pointlessly suffering in custody at the Bureau of Prisons. *Casey v. United States*, No. 4:18-CR-4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

## BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). It was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

Mr. Davis is unfortunately immunocompromised given his long-standing internal fight to keep his Chronic Hepatitis C under control, particularly when he has not been receiving the recommended medications for Hepatitis C while detained. (*See* Exhibit C, Mr. Davis's Medical Records.) Mr. Davis's request for compassionate release qualifies under the guidelines as extraordinary and compelling reasons. Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when

> The defendant is—
>
> (I) suffering from a serious physical or medical condition;
> (II) suffering from a serious functional or cognitive impairment; or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Davis's "suffering from a serious physical or medical condition." Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission. *See* BOP Program Statement 5050.49. During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau*

5

Case 7:08-cr-00081-BR   Document 61   Filed 08/10/20   Page 5 of 15

*of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population…", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing history); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

6

## ARGUMENT

Medical professionals within our country and around the world for that matter have deemed Mr. Davis's vulnerability to COVID-19 as being placed in the high-risk category of likely not being able to survive the Coronavirus if he contracts it due to his history of medical problems. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html. This constitutes "extraordinary and compelling reasons" for relief. Mr. Davis's underlying medical conditions make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. His release does not pose a danger to the community, and a balancing of the § 3553(a) factors with the risks to Mr. Davis posed by COVID-19 warrants relief.

**A. This Honorable Court has the authority to determine that Mr. Davis's vulnerability to COVID-19 does in fact constitute an "Extraordinary and Compelling Reason" for a sentence reduction.**

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. Courts have used their wise and appropriate discretion to provide defendants with relief under § 3582(c)(1)(A) "even when their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. §1B1.13." *United States v. Alexander Salabrarria*, Crim. No. 7:00-CR-95-1-BO, ECF No. 125, page 5 (E.D.N.C. April 14, 2020), citing *United States v. Mauma*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (listing cases holding same).

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25- to 40-percent chance of malignancy.

While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3.

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in their sentences under the compassionate release statute. They vary from individual to individual, which is to be expected, but a common thread attaches them all; that is, the need to otherwise have a fighting chance at surviving alongside the necessary love of your family, as opposed to physically suffering and unnecessarily deteriorating once the coronavirus is contracted by an inmate because of his or her unfortunate medical diseases and concerns or simply due to the fact that COVID-19 is running rampant across our federal prison system leading to unnecessary suffering and death amongst the inmates therein. Some of these cases are cited below to identify the range of which Federal Courts across the country are granting such Compassionate Release Requests. These cases include, but are not limited to:

- *United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *6 (S.D.W. Va. June 12, 2020) (Compassionate release granted to a defendant who was immunocompromised— suffering from a liver disease, **Hepatitis C**). *See also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 23, 2020) (listing "immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19");

- *United States v. Copeland*, No. 1:03-cr-01120-FB-1, 2020 WL 2537250 (E.D. N.Y. May 19, 2020) (Motion for compassionate release granted where defendant "has long battled chronic **_Hepatitis C_**…") (emphasis added);

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *3 (E.D. Va. May 6, 2020)("The Court finds that Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person of his age with underlying health conditions.");

- *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence."); and

- *United States v. Miller*, No. 16-cr-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) ("Miller squarely fits the definition of an individual who has a higher risk of falling severely ill from COVID-19. . . . Therefore, the Court finds that extraordinary and compelling reasons exist for his immediate compassionate release.").

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This pandemic, as applied to Mr. Davis with his current chronic illness and lack of recommended treatment, is an extraordinary and compelling circumstance.

**B. Mr. Davis's Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduced Sentence.**

The Centers for Disease Control have identified several factors that put individuals at higher risk for severe illness. "People of any age with **certain underlying medical conditions** are at increased risk for severe illness from COVID-19." CDC, *What to know about liver disease and*

9

*COVID*. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html. Those underlying conditions include Hepatitis B and C. *Id.*

A recent journal published by the Mayo Clinic states that "Hepatitis C is another RNA virus, actually not that different from coronavirus in some ways," says Dr. Stacey Rizza, a Mayo Clinic infectious diseases specialist. "It behaves very differently in humans, and it is a different virus, but anybody who has a chronic medical condition would be at greater risk of having a severe reaction to the coronavirus." *What People Living With Hepatitis C Need To Know About Covid-19,* Mayo Clinic, available at https://newsnetwork.mayoclinic.org/discussion/what-people-living-with-hepatitis-c-need-to-know-about-covid-19/.

Mr. Davis has one of the risk factors identified by the Centers for Disease Control and studies on those infected and that is "people with liver disease." His particular vulnerability to COVID-19 constitutes an extraordinary and compelling reason for relief given the spread of the virus within the Bureau of Prisons and the likely deadly impact it would have on him personally if contracted.

According to the Bureau of Prisons website, 1,383 federal inmates and 571 BOP staff members currently have tested positive for COVID-19, and 111 inmates have died and 1 BOP Staff Member. BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/. (These numbers continue to climb up as well as each hour passes.) While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate, as the below graph demonstrates.



Amid this rapidly-unfolding crisis, the universally-recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[4] Mr. Davis is exactly the type of individual deserving of compassionate release: he is at risk of severe illness and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

---

[4] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf*. The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf*.

11

**C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Davis's Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release/ "term of probation or supervised release with or without conditions not to exceed the unserved portion of the original term of imprisonment." 18 USC § 3582 (c)(1)(A).**

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Davis's compromised physical health, and the unique danger he faces if he contracts COVID-19 while being incarcerated especially when considering the cumulative effect of all medical factors impacting him and becoming severely ill, when combined with the other Section 3553(a) sentencing factors, clearly warrant relief.

First, Mr. Davis pled guilty to one count of Bank Robbery on December 1, 2008. Thus, while Mr. Davis's offense conduct was certainly serious, it did not involve any weapons or violence and was a result of his struggle with drug addiction at that time. He has actually made sure that he conquered his drug addiction while incarcerated by taking the 40-hour drug classes and believes that in a way his Hepatitis-C diagnosis is fortuitous in some sense since it has served as a wake-up call to ensure that he best treats his body.

Second, continued incarceration is not necessary to protect the community from the crimes of the defendant. He has also served more than 85% of his total time remaining. He is much older, about to turn 57 (fifty-seven) years old and weaker now as well. Moreover, his serious health conditions also serve as an impeccable deterrent to conducting himself in the most positive of ways. Any additional time in custody does not in any real way further the purposes of Sentencing as outlined in Section 3553(a).

Finally, in this case, like those cited above, a reduction or modification of Mr. Davis's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. Mr. Davis significantly rehabilitated himself while incarcerated - working in the kitchen, taking 40 hours of drug classes, completing computer skills classes, self-awareness classes, and social skills classes. (Unfortunately, due to a tornado that ravaged the facilities at F.C.I Estill on April 13th, 2020, Mr. Davis has been unable to obtain his copies of the certifications for the classes mentioned above.[5]) The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Davis, whose ability to engage in basic self-protective measures is restricted and thus, warrant relief.

Moreover, Mr. Davis has an immediate release plan. He has been in a long-standing familial relationship with Mr. Jeffrey Henry, his oldest sister's son. Mr. Henry resides in Wilmington, NC. His cousin, Steton Keaton is also facilitating acquiring employment for Mr. Davis as a warehouse worker. Accordingly, if this Honorable Court grants his compassionate release, Mr. Davis's nephew, Mr. Jeffrey Henry, will do everything he can to support Mr. Davis emotionally and otherwise since their goals will certainly be aligned with both the Court's and Mr. Davis's as well; that is, to compassionately permit Mr. Davis to receive the proper medical care and succeed on the outside while preventing him from having to unnecessarily and inhumanely further suffer and deteriorate in custody.

---

[5] Mr. Davis was housed at F.C.I Estill until having to be relocated due to it no longer being a suitable housing situation for the inmates.

13

Case 7:08-cr-00081-BR   Document 61   Filed 08/10/20   Page 13 of 15

## CONCLUSION

Mr. Davis has demonstrated extraordinary and compelling reasons for compassionate release and respectfully requests this Honorable Court to reduce his sentence to time served and/or "impose a term of probation or supervised release with or without any conditions […]" and/or add a period of home confinement as a condition of supervised release. *See* 18 U.S.C. Section 3582(c)(1)(A). Moreover, pursuant to both the applicable statutory provisions and policy requirements that it is properly warranted for this Honorable Court to accordingly reduce Mr. Davis's term of imprisonment via compassionate release.

Respectfully submitted, this the 10th day of August 2020.

                              GUIRGUIS LAW, PA

                              /s/ Nardine Mary Guirguis
                              Nardine Mary Guirguis
                              PANEL Attorney
                              434 Fayetteville St., Suite 2140
                              Raleigh, North Carolina 27601
                              Telephone: (919) 832-0500
                              Facsimile:  (919) 246-9500
                              nardine@guirguislaw.com

                              *Designation: CJA Appointed*

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant Attorney for the United States electronically at the following address:

>Ethan A. Ontjes
>Assistant United States Attorney
>Ethan.ontjes@usdoj.gov
>150 Fayetteville Street, Suite 2100
>Raleigh, North Carolina 27601

This 10th day of August 2020.

>GUIRGUIS LAW, PA
>
>/s/ Nardine Mary Guirguis
>Nardine Mary Guirguis
>PANEL Attorney